THE BOARD OF REVIEW OF MACON COUNTY *et al.*, Petitioners, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Respondents.

Fourth District   No. 5—97—0488

Argued February 17, 1998.—Opinion filed March 20, 1998.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Arthur B. Cornell (argued) and David O. Edwards, both of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for petitioners.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Marcia L. McCormick (argued), Assistant Attorney General, of counsel), for respondent Property Tax Appeal Board.

A. James Shafter (argued) and James E. Peckert, both of Kehart, Shafter, Hughes & Webber, P.C., of Decatur, and Patrick C. Doody and Gregory Lafakis, both of Doody & Lafakis, Ltd., of Chicago, for respondent A.E. Staley Company.

JUSTICE GREEN delivered the opinion of the court:

Respondent, A.E. Staley Company (Staley), the owner of a large, corn wet mill in Decatur (Staley property), brought a complaint before petitioner, the Board of Review of Macon County (Review Board), alleging the Staley property had been over assessed for the 1995 tax year. 35 ILCS 200/16—95 (West 1996). According to the record, the Staley property had received a tax assessment for that year in the amount of $10,735,357 (based on an assigned fair market value (FMV) of $32,521,500). The Review Board upheld the assessment.

■ Staley appealed the Review Board's decision to respondent, the Property Tax Appeal Board of the State of Illinois (PTAB). 35 ILCS 200/16—160, 16—180, 16—185 (West 1996). Following a hearing, the PTAB entered a written order on June 17, 1997, lowering the property tax assessment on the Staley property to $3,466,050 (based on a reduced FMV of $10,500,000). Pursuant to section 16—195 of the Illinois Property Tax Code (Tax Code), final administrative decisions of the PTAB are directly reviewable in the appellate court where, as here, a change in assessed valuation of $300,000 or more is sought. 35 ILCS 200/16—195 (West 1996). Accordingly, the Review Board and the County of Macon (Macon County), petitioners herein, brought administrative review of the PTAB's decision directly to this court pursuant to section 16—195 of the Tax Code and section 3—113 of the Administrative Review Law (735 ILCS 5/3—113 (West 1996)). We affirm.

For the year 1985, the parties had stipulated to a FMV for the Staley property of $25 million, which was more than twice as much as the $10,500,000 FMV found here by the PTAB, but many changes had taken place in the decade involved.

The following evidence is undisputed. The Staley property consists of 2,665,881 square feet or approximately 240 acres of land. The Staley property is considered an industrial complex and contains 105 buildings. In addition, the Staley property contains 233 grain silos and several grain elevator facilities (hereafter collectively referred to as grain elevator facilities). Staley no longer uses 800,000 square feet of the property, apparently because of obsolescence, and it has been abandoned. The majority of the buildings in use are for processing corn products, such as corn sweetener and cornstarch. All of the buildings were constructed in stages from 1910 to 1994, 12% of

the Staley property is designed for office and laboratory space, and 88% of the buildings on the Staley property are multistoried.

Staley keeps a minimum supply of grain in storage and, as a result, uses only one-fourth of its grain storage capacity. As a result, many of the grain elevator facilities have not been maintained and are deteriorating. Since 1985, Staley has discontinued producing certain products at the Staley plant; thus, many buildings on the Staley property have become obsolete. Staley is currently in the process of modernizing the plant in the starch production area, which will cost approximately $20 million.

The appraisal evidence before the PTAB consisted mostly of the testimony of Terrance P. McCormick for Staley and David Craig on behalf of Macon County.

McCormick's summary conclusions listed the rounded FMV of the Staley property as of January 1, 1995, using the three different valuation approaches, as follows: (1) cost approach, $10,750,000; (2) sales comparison approach, $10,250,000; and (3) income capitalization approach, $10,050,000. Based on these three approaches, McCormick's reconciled opinion of the FMV of the Staley property was $10,500,000.

McCormick testified concerning his appraisal of the Staley property, as follows: (1) in the past, he has appraised approximately 300 large industrial properties, with over 10 of those properties exceeding 1 million square feet; (2) he defined FMV as the "likely price [a] knowledgeable an[d] informed buyer and seller would agree under normal conditions *** of the market"; and (3) the highest and best use of the Staley property, as vacant, was industrial and, as improved, its present use. He also stated the Uniform Standard of Professional Practice guide recommends that the three approaches he used (cost, sales comparison, and income capitalization) should be used in all cases.

Using the cost approach, McCormick testified he valued the Staley property land at $7,500 per acre, for a total of $1,800,000 (7,500 multiplied by 240). To estimate the cost of the buildings, he used reproduction cost rather than replacement cost. His estimated reproduction cost of all buildings and silos was approximately $163,500,000. Market sales indicated a market depreciation of between 88% and 99%. Based on an age-life method, he applied 96% depreciation (2% annual depreciation) to all buildings and improvements. This was a result of his determination that the effective age of the buildings was 48 years (48 multiplied by 2%). McCormick estimated the economic life of the buildings was 60 years, which left a remaining economic life of 12 years. McCormick concluded that the total depreciated value of the buildings, improvements, grain eleva-

tor facilities, storage tanks, and dryers was $8,929,629. This depreciated value, added to the land value of $1,800,000, resulted in a total value of $10,729,629 (rounded to $10,750,000) using the cost approach.

Using the income capitalization approach, McCormick testified he found five rentals of older industrial complexes that indicated rental rates between $0.35 per square foot and $1.40 per square foot. He determined the Staley property had a rental rate of $0.50 per square foot after discounting for its extremely large size, multistory nature, age, condition, and location. He concluded the $0.50-per-square-foot operating income was $1,332,941, less management fees (25%) of $333,235, for a total net operating income of $999,706. Next, McCormick stated the proper capitalization rate was 15.5% based on a market analysis of sales properties indicating an overall capitalization rate range between 14.3% and 15.5%. McCormick divided the net operating income of $999,706 by 15.5%, for an indicated value of $6,449,716, and added the value of the grain elevator facilities, which was $3,593,934, for a total of $10,043,650 (rounded to $10,050,000) using the income capitalization approach.

Using the sales comparison approach, McCormick testified he did a separate analysis of the grain elevator facilities and the rest of the Staley property because the comparable sales he found did not have grain elevator facilities. McCormick indicated he used 13 properties sold on the market to compare with the Staley property (all property except the grain elevator facilities), and those properties sold from $0.59 per square foot to $5.89 per square foot. The 13 properties sold between December 1989 and September 1995. The 13 properties ranged in age from 19 to 79 years old and ranged in size from 170,000 to 2,479,000 square feet. Based on the 13 comparable sale properties, McCormick adjusted for differences (land to building ratio, percent of one-story area, and percent of office area) and determined the Staley property was valued at $2.50 per square foot. Applying the $2.50 per square foot, McCormick opined that the Staley property (all property except the grain elevator facilities) had a FMV of $6,664,703 using the sales comparison approach.

McCormick valued the grain elevator facilities separately. He used six comparable sales. Based thereon, he indicated the grain elevator facilities were worth $0.35 per bushel of capacity (here, the silos have a total capacity of 10,268,382 bushels), for a total value of $3,593,934. Thus, using the sales comparison approach, McCormick concluded the Staley property had a FMV of $10,258,637 ($6,664,703 in buildings plus $3,593,934 in grain elevator facilities), which was rounded to $10,250,000. McCormick concluded that based on all three

approaches, the Staley property had a reconciled value of approximately $10,500,000, placing greater weight on the sales comparison approach.

Craig assessed the Staley property as having a FMV of $24 million. He applied only the cost and sales comparison approaches, concluding the income capitalization approach was not relevant here. He deemed the highest and best use of the plant buildings was industrial and that the three office buildings should be subdivided and sold. He valued them separately because he believed a buyer of the whole tract would divide and sell those buildings individually or as a unit. He believed the cost approach was most appropriate because he could not find sales of comparable property due to the unique nature of the Staley property.

Craig began his cost approach analysis by valuing the Staley land at approximately $2 million based upon the price for sales of properties he deemed comparable. He then considered the costs of construction of four wet mills built in various parts of the country in recent years. Craig then determined the cost per bushel of capacity for those plants and adjusted for the difference between the total per-bushel capacity of those plants and the Staley plant.

Craig depreciated the various portions of the plant, based upon years of usage, and ended up with the following valuations: (1) plant buildings, $12,786,077; (2) three office buildings, $3,980,361; (3) grain elevator facilities, $4,107,354; and (4) site improvements, $1,400,000. He added those amounts to the land value of $2 million and obtained a FMV of $24,038,227 (the actual figure is $24,273,792). Craig rounded the FMV to $24 million.

In regard to an appraisal based on comparable sales, Craig valued the (1) three office buildings at $3,940,000, (2) plant buildings at $12,520,789, and (3) grain elevator facilities at $4,015,729. Craig's total FMV using this approach (excluding the land) was $20,476,518, which he rounded to $20,440,000. Craig recognized that in separating the three office buildings from the rest of the Staley property, additional separating and selling costs would be incurred, and he stated he lessened his valuation of those properties for that reason.

Gary Battuello, a real estate appraiser, testified as a rebuttal witness for Staley. He was somewhat critical of Craig's theory of separating the three office buildings from the other property and selling them. He maintained that $250,000 in expenses would be incurred in providing space in other parts of the plant for functions now performed in the three office buildings if only one-half the space now used in the office buildings would then be necessary. He was also concerned that Craig failed to consider the difficulty of selling a build-

ing as large as the largest office building and criticized Craig's use of sales of much smaller office buildings as comparable to a possible sale of the largest office building. Battuello deemed McCormick's appraisal to be more accurate than Craig's, but he thought 5 of the 13 comparable sales used by McCormick concerned property too small to be relevant here.

Macon County called three rebuttal witnesses: Daniel Collins, who worked on the Craig appraisal; William Beuchenschuetz, a member of the Review Board; and Ron Finley, a supervisor of assessments. All three witnesses criticized McCormick's comparable sales.

In its written decision, PTAB explains it found McCormick's testimony most persuasive of all the witnesses and virtually adopted his appraisal. PTAB approved McCormick's emphasis on the sales comparison approach and criticized Craig's emphasis on the cost approach, citing *Willow Hill Grain, Inc. v. Property Tax Appeal Board*, 187 Ill. App. 3d 9, 14-15, 549 N.E.2d 591, 596 (1989), and *Chrysler Corp. v. Illinois Property Tax Appeal Board*, 69 Ill. App. 3d 207, 211, 387 N.E.2d 351, 355 (1979). The opinions in both of those cases indicated the cost approach method of appraisal should be used only when evidence of reasonable comparable sales is not available.

The PTAB concluded that ample evidence of comparable sales was available and, accordingly, Craig's appraisal based on the cost approach was entitled to little weight. PTAB also stated McCormick's determination that the highest and best use of the property as a single industrial complex was a better-supported theory than Craig's opinion that the property should be divided because Craig had given too little consideration to the factors involved in doing so. PTAB then concluded that even if cost was to be a determinative factor in valuation, McCormick's analysis was more persuasive because he had determined depreciation based on factors he had learned through his analysis of the information available concerning comparable sales. PTAB concluded that five of the sales McCormick considered were not comparable, but the remaining eight were comparable.

■ As with other similar decisions of administrative agencies, determinations by the PTAB of facts, such as valuations of real estate for property tax purposes, are generally "considered *prima facie* true and correct and are not to be set aside on administrative review unless they are against the manifest weight of the evidence, or if they are not supported by competent evidence." *Showplace Theatre Co. v. Property Tax Appeal Board*, 145 Ill. App. 3d 774, 777, 495 N.E.2d 1312, 1315 (1986), citing *Cherry Bowl, Inc. v. Property Tax Appeal Board*, 110 Ill. App. 3d 326, 328, 426 N.E.2d 618, 620 (1981). However, PTAB's valuation will be reversed when it has used an

improper method of valuation. *Willow Hill*, 187 Ill. App. 3d at 14, 549 N.E.2d at 595-96, citing *Chrysler*, 69 Ill. App. 3d at 210-11, 387 N.E.2d at 354.

■ Here, PTAB's evaluation was not contrary to the manifest weight of the evidence. It was supported by McCormick's testimony. Under *Willow Hill* and *Chrysler*, the sales comparison approach was the best method of valuation and that was used. Macon County and the Review Board maintain that the purportedly comparable sales used were not sufficiently comparable. The Supreme Court of Illinois has determined that in evaluating real estate, the use of evidence of other sales of somewhat similar property is admissible if the evidence would be of aid to the trier of fact and the opponent of the evidence has ample opportunity to show the difference between the property being evaluated and the property involved in the sale. *People ex rel. the Director of Finance v. Young Women's Christian Ass'n*, 74 Ill. 2d 561, 570-71, 387 N.E.2d 305, 310 (1979). Here, 8 of the 13 comparable sales McCormick considered ranged in size from 720,000 to 2,479,000 square feet; thus, information as to sales of these properties was of aid to the PTAB.

Macon County and its Review Board also complain that PTAB and McCormick failed to evaluate the three office buildings separate and apart from the rest of the Staley plant. PTAB concluded that Craig, who did give these properties a separate evaluation as having a different highest and best use, did not give sufficient consideration to the costs that would be incurred by separating these three buildings for sale and the difficulty any buyer would have with filling these buildings, especially the administration building, with tenants because of the size of these buildings. This determination by the PTAB was supported by competent evidence and was not contrary to the manifest weight thereof.

For the reasons stated, we affirm the decision of the PTAB on review.

Affirmed.

KNECHT and COOK, JJ., concur.