THE BOARD OF EDUCATION OF GIBSON CITY-MELVIN-SIBLEY COMMUNITY UNIT SCHOOL DISTRICT No. 5, Petitioner-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Respondents-Appellees.

Fourth District No. 4—04—0166

Argued December 15, 2004.—Opinion filed January 4, 2005.

Stuart L. Whitt (argued), of Whitt Law, of Aurora, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Erik G. Light (argued), Assistant Attorney General, of counsel), for appellee Illinois Property Tax Appeal Board.

David A. Suess and Thomas M. Atherton, both of Bose, McKinney & Evans, L.L.P., of Indianapolis, Indiana, for appellee Ameren Energy Generating Company.

Tony Lee, State's Attorney, of Paxton (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee Ford County Board of Review.

JUSTICE STEIGMANN delivered the opinion of the court:

In 2000 and 2001, petitioner, the Board of Education of Gibson City-Melvin-Sibley Community Unit School District No. 5, appealed to respondent Ford County Board of Review the 2000 and 2001 property-tax assessments of a Gibson City power station owned by respondent

Ameren Energy Generating Company, alleging that the Ford County supervisor of assessments failed to classify the power station's permanently affixed machinery and equipment as real property, thereby exempting it from taxation. In both years, the Board of Review denied the School District's appeals, and the School District appealed those decisions to respondent the Property Tax Appeal Board (PTAB).

In May 2003, the PTAB conducted a consolidated hearing on the 2000 and 2001 assessments of the power station. In February 2004, the PTAB issued a 43-page decision in which it (1) upheld the Board of Review's assessment of the power station and (2) concluded that section 24—5 of the Property Tax Code (35 ILCS 200/24—5 (West 2000)) precluded the assessment of the power-station equipment as real estate.

The School District appeals, arguing that (1) the PTAB's finding that Ford County had a general practice of not assessing permanently affixed machinery and equipment as real estate was against the manifest weight of the evidence and (2) the PTAB's conclusion that section 24—5 of the Code precludes assessment of the power station's permanently affixed equipment as real property was erroneous as a matter of law. We disagree and affirm.

## I. BACKGROUND

### A. Illinois Tax Law

Article IX, section 5(c), of the Illinois Constitution of 1970 provides as follows:

> "On or before January 1, 1979, the General Assembly by law shall abolish all ad valorem personal property taxes and concurrently therewith and thereafter shall replace all revenue lost by units of local government and school districts as a result of the abolition of ad valorem personal property taxes subsequent to January 2, 1971." Ill. Const. 1970, art. IX, § 5(c).

In 1979, to (1) effectuate the intent of this section of the Illinois Constitution and (2) prevent the reclassification of personal property as real property, the General Assembly enacted section 18.1 of the Code (the Freeze Act) (Ill. Rev. Stat. 1979, ch. 120, par. 499.1 (now 35 ILCS 200/24—5 (West 2000))), which barred reclassification of personal property that existed before 1979. In 1982, the legislature amended the Freeze Act to prohibit taxation of "like kind" property acquired after January 1, 1979. The Freeze Act now provides, in pertinent part, as follows:

> "Ad valorem personal property taxes shall not be levied on any personal property having tax situs in this State. *** No property lawfully assessed and taxed as personal property prior to January

814

1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as real property subject to assessment and taxation." 35 ILCS 200/24—5 (West 2000).

## B. The May 2003 PTAB Hearing

Because the parties are familiar with the evidence presented at the May 2003 hearing, we review it only to the extent necessary to put the School District's arguments in context.

Evidence showed that the power station is a 234-megawatt power-generation facility that operates during peak usage periods to supplement electricity generated by "base load stations" when demand is high. (Such facilities are referred to as "peaker plants.") The power-station equipment at issue consists of two Siemens Westinghouse model W501D5A simple-cycle gas turbine generators and a transformer. The gas turbines are approximately 10 feet in diameter and 20 feet long. Each generator weighs over 400,000 pounds. The turbines each weigh over 300,000 pounds and generate over 88 tons of torque when rotating. Each generator is bolted to a raft foundation, which is a freestanding concrete block measuring 87 feet long, 42 feet wide, and 6 feet thick. The transformer sits on its own concrete slab, which is 8 feet thick and weighs around 240,000 pounds.

Darin Watson, the School District's expert witness on construction and operation of gas-fired combustion turbine generators, testified that although it is physically possible to move the power-station equipment, it would not be economically feasible. In contrast, Ameren's expert witness, Richard Voytas, testified that it was as likely that the power station's electric generating equipment would be moved as it was that it would stay in place over the next five years. Brent Homes, who was accepted by the PTAB as an expert in installation and relocation of such equipment, testified that he inspected the power-station equipment and determined that it could be moved and reinstalled at another location for a cost of between $6.56 and $8.85 million. After the equipment's removal, all that would remain at the site would be a water tank, the administration building, foundations, underground piping, and fuel-oil tanks.

Ford County Supervisor of Assessments Charles Werner testified that, based on his understanding of Ford County assessment practices prior to 1979, it was his policy not to assess machinery and equipment. In preparation for the hearing, Werner compiled over 50 property record cards on industrial and commercial properties in Ford County with a value of $30,000 or more. Approximately one-half of those properties were either (1) manufacturing properties or (2) properties used for generating electricity, gas pipelines, or pumping stations.

Based on his review of the property record cards for manufacturing properties, Werner concluded that land, tanks, and buildings were assessed as real property both before and after 1979. However, machinery and equipment were not assessed even if they were very large or bolted down. Nothing in the property record cards indicated that equipment at properties used for generating electricity, gas pipelines, or pumping stations was assessed as real property. One of the property record cards for an electric generating property indicated that a large transformer that was bolted to tracks and a foundation was not assessed as real property. Werner also reviewed personal-property tax returns for two Ford County townships, which indicated that electrical substation equipment was assessed as personal property prior to 1979.

Werner further testified that based on his review of the property record cards for service facilities such as propane-distribution companies, fertilizer companies, and concrete facilities, nothing indicated that machinery or equipment at those facilities was assessed as real property. He acknowledged that some grain-handling equipment at grain-processing facilities was assessed as real property.

In February 2004, the PTAB issued its written decision, in which it concluded that the general-assessment practice in Ford County prior to and after 1979 was not to classify machinery and equipment as real property. In so concluding, the PTAB stated, in pertinent part, as follows:

"[W]ith respect to the two, Siemens Westinghouse model 501D5A simple cycle gas turbines, and the associated generators, the [PTAB] finds there was no similar electrical generating equipment in Ford County prior to January 1, 1979. However, in determining whether this equipment should be classified and assessed as real property, the [PTAB] relies heavily on the testimony of [Werner]. The [PTAB] finds that Werner was candid, forthright, and very open in his responses to questioning about the assessment practices in Ford County and his understanding of the notations on the various property record cards contained in [the Board of Review's] [e]xhibit No. 3 and the other property record cards submitted by the parties. The [PTAB] finds his testimony to be very credible, honest[,] and frank.

*** The [PTAB] finds that based upon a review of the property record cards submitted by the parties and Werner's testimony, the general[-]assessment practice in Ford County prior to and after 1979 was not to classify and assess machinery and equipment as real property."

The PTAB thus upheld the Board of Review's decision not to assess the equipment at the power station.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review decisions of the PTAB in accordance with the Administrative Review Law. 735 ILCS 5/3—101 through 3—113 (West 2000). The Administrative Review Law limits the scope of judicial review by providing that the findings and conclusions of an administrative agency on questions of fact shall be *prima facie* true and correct. 735 ILCS 5/3—110 (West 2000). Accordingly, we will not disturb the factual findings of the PTAB unless they are contrary to the manifest weight of the evidence. *Oregon Community Unit School District No. 220 v. Property Tax Appeal Board*, 285 Ill. App. 3d 170, 175, 674 N.E.2d 129, 132 (1996).

### B. The PTAB's Finding That Ford County Had a General Practice of Not Assessing Permanently Affixed Machinery as Real Estate

The School District first argues that the PTAB's finding that Ford County's general practice was not to assess permanently affixed equipment as real property was against the manifest weight of the evidence. Specifically, the School District contends that Werner's testimony and the property record cards showed that no policy existed against classifying machinery and equipment as real property. In response, Ameren and the PTAB cite (1) Werner's "credible, honest[,] and unrefuted testimony"; (2) the property record cards; and (3) the pre-1979 personal-property tax returns, as sufficient evidence to support the PTAB's finding that it was Ford County's policy and practice not to assess machinery and equipment as real property. We agree with Ameren and the PTAB.

"[W]eighing of evidence and determining the credibility of the witnesses are the jobs of the PTAB and are uniquely within its province." *Oregon*, 285 Ill. App. 3d at 175, 674 N.E.2d at 132-33. Accordingly, if the record contains evidence to support an agency's factual finding, we will not disturb that finding on appeal. *Oregon*, 285 Ill. App. 3d at 175, 674 N.E.2d at 133.

Werner testified in detail regarding Ford County's assessment of numerous industrial and commercial properties. Based on his review of the property record cards and his experience, he concluded that Ford County's policy was not to assess manufacturing equipment, electrical generating equipment, pipelines, or pumping-station equipment as real property. The PTAB found the evidence and Werner's testimony to be credible and thus determined that it was the practice in Ford County not to assess electric generating equipment. Because

the record contains evidence supporting the PTAB's determination, we conclude that it was not against the manifest weight of the evidence.

### C. The PTAB's Conclusion That the Freeze Act Precluded Assessment of the Power Station's Turbines as Real Property

The School District next argues that the PTAB's conclusion that the Freeze Act (35 ILCS 200/24—5 (West 2000)) precluded assessment of the power station's permanently affixed machinery and equipment as real property was erroneous as a matter of law. We disagree.

As previously stated, the Freeze Act provides as follows:

"Ad valorem personal property taxes shall not be levied on any personal property having tax situs in this State. *** No property lawfully assessed and taxed as personal property prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as real property subject to assessment and taxation. No property lawfully assessed and taxed as real property prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as personal property." 35 ILCS 200/24—5 (West 2000).

The School District specifically contends that Ameren presented no evidence that any property of "like kind" existed in Ford County. In support, the School District points to the PTAB's findings that (1) the power station is the only peaker plant in Ford County; (2) the power station is the only Ford County electric generating facility powered by two natural-gas-fired turbines with a generating capacity of 234 megawatts; (3) there was no showing of any assessment of any substantially similar gas-fired turbo generators in Ford County prior to January 1, 1979, which would provide "clear and unequivocal guidance" with respect to the power station; (4) there was no showing of the similarities between the electrical equipment at substations in Ford County and the power station; and (5) there was no similar electric generating equipment in Ford County prior to January 1, 1979. The School District thus asserts that the PTAB's legal conclusion—that the power-station equipment is personal property because it is of like kind to other equipment that was deemed personal property prior to 1979—is inconsistent with its factual conclusions.

In response, Ameren and the PTAB rely on *Oregon* for the proposition that any newly acquired property that would have been assessed as personal property under the pre-1979 assessment method is like-kind property and must also be considered personal property. In *Oregon*, the PTAB reversed the Ogle County Board of Review's assessment of Commonwealth Edison's machinery and equipment at the Byron Nuclear Power Plant. Specifically, the PTAB found that (1) prior

to January 1, 1979, Ogle County classified manufacturing-process machinery and equipment as personal property and (2) the machinery and equipment at the Byron Plant were similar and of like kind to equipment found at other Ogle County industries that was classified as personal property. *Oregon*, 285 Ill. App. 3d at 174, 674 N.E.2d at 132.

The petitioners in *Oregon* challenged "the PTAB's application of the Freeze Act's like-kind provision." *Oregon*, 285 Ill. App. 3d at 180, 674 N.E.2d at 136. Specifically, they claimed that "machinery and equipment is of like kind only if it is substantially similar in nature and function to pre-1979 machinery and equipment." *Oregon*, 285 Ill. App. 3d at 180, 674 N.E.2d at 136. The petitioners relied, in part, on *County of Whiteside v. Property Tax Appeal Board*, 276 Ill. App. 3d 182, 186, 658 N.E.2d 481, 485 (1995), in which the appellate court determined that property was of like kind based on the following factors: "(1) performance of the same function; (2) production of the same product; (3) similar portability and manner of attachment; and (4) that the new equipment replaced existing machinery."

The *Oregon* court rejected the notion that the factors relied on in *Whiteside* established an exclusive method for determining whether property is of like kind, noting that in *Whiteside*, no evidence was presented as to the county's assessment practices prior to 1979. Instead, the *Oregon* court accepted the PTAB's position that although there were no other nuclear power plants in Ogle County, the process machinery and equipment at the Byron plant were of like kind to other machinery and equipment in Ogle County classified as personal property prior to 1979. The court reasoned that the like-kind provision of the Freeze Act was designed to continue the practices of assessors existing prior to January 1, 1979. Thus, newly acquired property that would have been assessed as personal property under the pre-1979 method is of like kind and "frozen" as personal property. *Oregon*, 285 Ill. App. 3d at 182, 674 N.E.2d at 137.

We agree with the PTAB's finding that this case is analogous to *Oregon*, and we agree with the *Oregon* court's analysis. We are not concerned about any perceived inconsistency between (1) the PTAB's candid acknowledgment that no equipment exactly like the power station's gas-turbine generators previously existed in Ford County and (2) its conclusion that the power-station equipment is of like kind to other Ford County equipment not subject to taxation. We agree with the PTAB's interpretation of the Freeze Act that focuses first on whether a pre-1979 practice for assessing equipment existed. Where the PTAB's finding that a pre-1979 practice existed not to assess machinery and equipment is not against the manifest weight of the

evidence, the Freeze Act requires that that same practice be applied to post-1979 machinery and equipment. *Oregon*, 285 Ill. App. 3d at 182, 674 N.E.2d at 137.

### III. CONCLUSION

For the reasons stated, we affirm the PTAB's judgment.

Affirmed.

TURNER and McCULLOUGH, JJ., concur.