Filed 1/31/08          NO. 4-07-0405

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

BLOOMINGTON PUBLIC SCHOOLS, DISTRICT     )   Appeal from
NO. 87, McLean County, Illinois,          )   Illinois Property
          Petitioner-Appellant,           )   Tax Appeal Board
                  v.                       )   No. 04-00644-C-3
THE ILLINOIS PROPERTY TAX APPEAL          )
BOARD, SEARS STORE No. 2840, and          )
THE McLEAN COUNTY BOARD OF REVIEW,        )
          Respondents-Appellees.          )

_____

          JUSTICE McCULLOUGH delivered the opinion of the court:

          The petitioner, Bloomington Public Schools, District

No. 87, McLean County, Illinois (School District), appeals the

final administrative decision of the Property Tax Appeal Board of

the State of Illinois (PTAB).  In February 2005, the Board of

Review of McLean County found the 2004 assessed value for Sears

Store No. 2840 (Sears) was $1,980,262.  The respondent, Sears,

appealed that assessment to PTAB; and in April 2007, PTAB found

the assessed valuation was $1,265,400.

          The School District appeals, arguing that (1) PTAB

should have considered the sale of the mall in determining the

fair market value of Sear's property, (2) PTAB should have

considered the value of the land in determining the fair market

value of Sear's property, and (3) PTAB's decision to use the fair

market value found by Sear's appraiser is against the manifest

weight of the evidence.  We disagree and affirm.

          Because the parties are familiar with the evidence

presented at the June 2006 hearing, we present facts only to the

extent necessary to provide context for the issues.

Evidence showed the Sears property is a one-story retail store with an attached auto service center. The building is 117,234 square feet and sits on a 9.19-acre parcel. The land has been improved with a parking lot, sidewalks, lighting, and landscaping. The property has been leased to Sears since 1966 as part of Eastland Mall. In 1996, the lease was changed, allowing Sears to upgrade and expand the property. The 1996 lease runs through 2011 with an option of three five-year extensions. The City of Bloomington township assessor assessed the property for 2004 at $1,980,262. The Board of Review upheld that assessment. In McLean County, the assessed value is one-third of the fair cash value. Fair cash value has the same meaning as fair market value and is defined as "the price a willing buyer would pay a willing seller for the subject property, there being no collusion and neither party being under any compulsion." Residential Real Estate Co. v. Illinois Property Tax Appeal Board, 188 Ill. App. 3d 232, 242, 543 N.E.2d 1358, 1364 (1989). Sears is responsible for the property taxes.

In April 2007, PTAB issued its written decision. PTAB concluded the best evidence of Sears' fair market value was the appraisal submitted by Sears estimating the January 1, 2004, fair market value at $3.8 million. PTAB stated:

> "[PTAB] finds the appellant's appraiser pro-
> vided competent, professional, and logical
> testimony in support of his appraisal method-

ology, the data used in the approaches to value, the adjustment process, and final value conclusion using two of three traditional approaches to value. In contrast, [PTAB] finds the [school district‹s] appraisal prepared a sales-comparison approach regarding only the subject's vacant land value within a limited[-]cost approach. The [school district‹s] value conclusion was based on an alternative use based on a flawed highest and best use finding. *** [PTAB] finds the value conclusion detailed by [Sears] to be a persuasive indicator of the subject's fair market value. Although some of the sales used were properties located outside of Illinois, the appraiser performed logical adjustments to the comparable anchor sales for differences to the subject in arriving at the final [fair market] value *** of $3,750,000. The courts have stated that where there is credible evidence of comparable sales, these sales are to be given significant weight as evidence of market value."

PTAB reduced the assessed value established by the Board of Review by $714,862.

This appeal followed.

We review PTAB's decisions under the Administrative Review Law. 735 ILCS 5/3-101 through 3-113 (West 2006). The scope of judicial review is limited to determining whether the findings and orders of PTAB are contrary to the manifest weight of the evidence, and it is not this court's function to reweigh the evidence or assess the credibility of the witnesses. Residential Real Estate Co., 188 Ill. App. 3d at 241, 543 N.E.2d at 1363. We take the findings and conclusions of PTAB on questions of fact to be prima facie true and correct. Board of Education of Gibson City-Melvin-Sibley Community Unit School District No. 5 v. Property Tax Appeal Board, 354 Ill. App. 3d 812, 816, 822 N.E.2d 550, 554 (2005) (hereinafter Gibson City).

The Property Tax Code requires that the taxing authority assess real-estate taxes at one-third the fair market value of the subject property. 35 ILCS 200/9-145 (West 2004). The appraisals presented to PTAB focused on determining the fair market value of the Sears property through three traditional methods of valuation. Sears' appraiser used the sales-comparison and income approaches. The School District's appraiser used the sales-comparison, income, and cost approaches.

The present case requires this court to first determine whether PTAB erred in finding the sale of Eastland Mall was not an arm's-length transaction prior to evaluating whether PTAB should have given the sale of Eastland Mall weight in determining the fair market value of the Sears property.

In deciding to give no weight to the sale of Eastland Mall, PTAB concluded the sale was not an arm's-length transaction. The School District argued this finding of fact was in error. The transfer declaration states the beneficial owner of the property before and after the sale was Eastland Mall, LLC, with Eastland Member, LLC, being the sole member of Eastland Mall, LLC. Prior to the sale, Eastland Member, LLC, consisted of 17 members, including Eastland Holding I, LLC. After the sale there were two members of Eastland Member, LLC. Eastland Holding I, LLC, was the only member that remained before and after the sale. However, the membership within Eastland Holding I, LLC, also changed during the sale. Thus, the School District argued a transfer of the beneficial ownership of Eastland Mall resulted. The School District contended Sears had from December 29, 2005 (when the transfer declaration was submitted into evidence), until the hearing on June 20, 2006, to explain the purchase price as something other than an arm's-length transaction. Sears did not do so, and when Sears' witness was asked by PTAB whether he believed the sale was an arm's-length transaction, he failed to answer the question. The Sears assessor stated in response that the deal was made with leases in place as part of a three-mall transaction.

Mike Ireland, the township assessor for the City of Bloomington, testified that he believed the sale was at arm's length. Under the Property Tax Code, assessment officers may use the information on transfer declarations in properly assessing

- 5 -

property value. 35 ILCS 200/31-30 (West 2004). Criminal penalties attach for false statements on transfer declarations. 35 ILCS 200/31-50 (West 2004). In this case, the transfer declaration shows a $79,030,000 purchase price and an outstanding mortgage of $59,400,000 for Eastland Mall's sale. Finally, the transfer declaration provides that the property was advertised for sale and that $19,630 in taxes were paid on the sale.

In its written decision, PTAB concluded the Eastland Mall transaction was not an arm's-length sale for five reasons, and the sale therefore did not provide evidentiary value in establishing the correct assessment. First, PTAB found the transaction was an ownership restructuring, where beneficial ownership might have been unchanged, rather than a market sale. The transfer declaration shows the owner before and after the sale was Eastland Member, LLC. PTAB does not consider the change of members within Eastland Member, LLC, sufficient evidence of change in beneficial ownership. Second, PTAB found the sale was most likely a leased-fee transaction and not a fee-simple transaction. Third, PTAB found no evidence explained how the $79,030,000 sale price was allocated to Eastland Mall. Fourth, PTAB found the three-mall sale to be a highly complicated transaction like that in <u>Town of Cunningham v. Property Tax Appeal Board</u>, 225 Ill. App. 3d 760, 587 N.E.2d 573 (1992), with little consideration of fair market value. Finally, PTAB found the signatures on the second real estate transfer declaration indicated one individual signed as both the buyer and the seller.

- 6 -

Sears argued that PTAB's conclusion from the evidence that the sale of Eastland Mall was not an arm's-length transaction, and therefore not indicative of the fair market value of the property, was not against the manifest weight of the evidence.  We agree.  PTAB's determination that the sale was not at arm's length is a question of fact, which we consider prima facie true and correct.  735 ILCS 5/3-110 (West 2004).  While Edward Salisbury, Sears‹ appraiser, and Mike Ireland, the township assessor, had different conclusions regarding whether the Eastland Mall sale constituted an arm's-length transaction, PTAB's job is to weigh the evidence and determine the credibility of the witnesses.  Oregon Community Unit School District No. 220 v. Property Tax Appeal Board, 285 Ill. App. 3d 170, 175, 674 N.E.2d 129, 132, (1996).  As the record contains evidence to support PTAB's factual finding, we will not disturb that finding.  Gibson City, 354 Ill. App. 3d at 816, 822 N.E.2d at 554.

        We return to the question of whether PTAB erred in its decision not to give any weight to the sale of Eastland Mall.  The Illinois Supreme Court has held that a contemporaneous sale of the subject property between parties dealing at arm's length is relevant to the question of fair market value.  People ex rel. Korzen v. Belt Ry. Co. of Chicago, 37 Ill. 2d 158, 161, 226 N.E.2d 265, 267 (1967).  "However, the sale price of property does not necessarily establish its value without further information on the relationship of the buyer and seller and other circumstances."  Residential Real Estate, 188 Ill. App. 3d at

- 7 -

242, 543 N.E.2d at 1364. The record shows little evidence regarding the sales contract and how the sales price was allocated among the three malls sold. Where sufficient evidence of comparable sales was presented by both Salisbury for Sears and the School District's appraiser, Brian Finch, PTAB properly concluded that no weight should be given to the sale of Eastland Mall in determining the fair market value of the Sears property.

The School District next argued PTAB should have considered the land value in determining the Sears property's fair market value. Finch prepared an appraisal based on both the traditional income approach and the sales-comparison approach. He used sales comparison to assess the property's value in two ways, as compared with sales of anchor stores and as compared to local sales of land. Both the income approach and the comparable sales of anchor stores produced fair market values similar to those of Sears‹ appraisal.

When the School District's appraisal valued the underlying land through comparable local sales, Finch found it to be considerably higher than the income approach and comparable sales of anchor stores. In valuing the land, the School District's appraiser compared seven local sales to the subject property. He opined the first comparable sale was the best evidence of the subject property's value. It was similar to the subject property in that it was (1) similar in size, (2) located less than a mile from the subject property, (3) located on a corner like the subject property, (4) similarly exposed to Veteran's Parkway, and

- 8 -

(5) sold approximately five months prior to the valuation date. It sold for $13.96 per square foot. Finch valued the land at $14 per square foot for a total fair market value of $5,604,000.

Finch then used the cost method to appraise the value of the improvements on the site. He used a nationally recognized cost service and determined the 38-year-old building was nearing the end of its economic life of 50 years. He applied a straight-line rate of depreciation and found the improvements should be valued at $485,585. He added the depreciated value of the building improvements to the estimated land value for a value of $6.09 million. Finch's report states, "While the cost approach indicated a higher value, its dependence on mathematical calculation to some extent yields an unreliable result. With overall depreciation estimated at over 96%, common sense suggests the improvements are essentially fully depreciated, given the property age." He concluded the market value for a typical buyer was land value plus some minor value for site improvements for an estimated fair market value of $5.7 million.

The School District supports the argument that the subject property is at least worth the value of the underlying land pursuant to the Illinois Supreme Court holding in Springfield Marine Bank v. Property Tax Appeal Board, 44 Ill. 2d 428, 256 N.E.2d 334 (1970). The School District contends that under Springfield Marine Bank, a property-tax assessment should not be reduced based on the income actually earned from the lease but should be based on the earning capacity of the "'tract or lot of

real property.<" <u>Springfield Marine Bank</u>, 44 Ill. 2d at 430, 256 N.E.2d at 336.

PTAB looked to the highest-and-best-use concept to decide which appraiser testified to the best evidence of the subject's fair market value. PTAB found the School District's appraisal determined the highest and best use as vacant was for retail development. As improved, the highest and best use is not as an anchor store. PTAB found the report to be flawed regarding the property's highest and best use. Finch's appraisal applied the four tests for highest and best use (physically possible, legally permissible, financially feasible, most productive) only as if the property were vacant. PTAB found that Finch's appraisal failed to fully analyze and perform the four tests. PTAB was unpersuaded that the building was near the end of its economic life as it had been expanded and remodeled between 1997 and 1999. PTAB found the property should be valued as an anchor store for Eastland Mall under <u>Illinois v. Illinois Central R.R. Co.</u>, 27 Ill. 64 (1861) (property should be valued for the purposes for which it was constructed and not for any other purpose for which it might be used). PTAB found Finch did not demonstrate financial feasibility to redevelop the parcel; he took no consideration of the cost to acquire the lease or reconfigure or demolish the building. PTAB found these costs must be accounted for since any potential buyer of the parcel would heavily weigh those factors. PTAB, citing <u>In re Rosewell</u>, 120 Ill. App. 3d 369, 458 N.E.2d 121 (1983), found Finch's land values to be

speculative as neither Eastland Mall nor Sears had any future plans to demolish or redevelop the property. In <u>Rosewell</u>, 120 Ill. App. 3d at 375, 458 N.E.2d at 126, the court noted, "Values which are future in character may not be taken into consideration *** where they are so elusive and difficult of ascertainment that they have not affected the present market value of the property." PTAB concluded Finch's proposed highest and best use as vacant land was not reasonable, probable, or proximate. PTAB gave little weight to Finch's assessment of fair market value. PTAB concluded because the School District's $5.7 million estimated fair market value was less than the $5,946,733 township assessment, both the School District and Sears' estimated fair market value supported a reduction in the assessed valuation.

Sears argues that PTAB's conclusion that the land-only value of the property was not determinative of the fair market value was not against the manifest weight of the evidence. PTAB could rely on Salisbury's testimony over that of Finch under <u>Gibson City</u>, 354 Ill. App. 3d at 816, 822 N.E.2d at 554. Salisbury testified that the land-only value was not determinative of the highest and best use; that is, the analysis should consider the potential uses of the property and its current use and not the land value as vacant. Sears argues Finch admitted his land-value assessment relied on speculative future events which, under <u>Rosewell</u>, should not affect the market value of the property.

Sears argues the decision in <u>Board of Review of Macon County v. Property Tax Appeal Board</u>, 295 Ill. App. 3d 242, 692

N.E.2d 417 (1998), supports PTAB's decision. In that case, the fair market value of the taxpayer's industrial complex was at issue. The Board of Review's appraiser valued each of three office buildings separately as part of the highest-and-best-use analysis, concluding the three buildings should be subdivided and sold separately from the remainder of the property. Board of Review of Macon County, 295 Ill. App. 3d at 246, 692 N.E.2d at 420. This court held that PTAB's decision rejecting those conclusions was not against the manifest weight of the evidence and was supported by competent evidence, where the Board of Review's appraiser "did not give sufficient consideration to the costs that would be incurred by separating these three buildings for sale and the difficulty any buyer would have with filling these buildings *** with tenants because of the size of these buildings." Board of Review of Macon County, 295 Ill. App. 3d at 248, 692 N.E.2d at 421-22. Sears argues Finch acknowledged there would be costs to demolishing or modifying the property that he did not consider in his appraisal. Finch admitted the mall owner would be reluctant to demolish part of the existing mall and develop it into something other than an anchor store.

Sears argues the record contains evidence to support PTAB's giving little weight to Finch's land-only value. Four of the seven land sales were well below Finch's $14-per-square-foot estimate. Sales six and seven were the most similar properties because they were acquired by Eastland Mall, yet Finch gave them the least weight. Finch relied on properties with zoning and

size differences.  Finally, Sears argues <u>Springfield Marine Bank</u> does not require PTAB to give more weight to the land value.  In this case, the long-term lease is not a low rental income where the rental value of the property has increased significantly.  Sears points out <u>Springfield Marine Bank</u> does not hold that a flawed land-only valuation of an improved property is determinative of the property's fair market value.

In its reply brief, the School District states Finch did not prepare a land-only appraisal or speculate as to future uses of the property.  His appraisal began with the value of the land as though vacant using the sales-comparison approach.  He used all three traditional approaches to estimate fair market value and found only the cost approach resulted in a fair market value that would take into account the value of the land.  Because of the age of the building, Finch depreciated over 96% of the cost of the improvements.  He used the ordinary and customary technique to conclude the fair market value of the Sears property was worth $5.7 million.  The School District argues that his approach is supported by the Appraisal Institute and that Finch reached a sensible conclusion using all three traditional approaches to value.

The School District argues the Sears appraisal is flawed because Salisbury intentionally left out the cost approach to value and did not value the land.  Both Salisbury and Finch reached similar results using the income and sales-comparison approaches.  Finch continued by comparing those results to the

land value and found the land value far exceeded the results of both the income and sales approaches while Salisbury was unaware that his result could not be reconciled with the value of the land based on sales comparisons or the cost approach. The School District argues PTAB's analysis of Finch's determination of land value is not consistent with the facts set forth in the record. Finch supplied comparable land sales and opined as to the value of the land, and Salisbury did neither. Finch reviewed seven sales in close proximity to Sears. He concluded the first comparable sale was the best indicator of the subject property's land value because it was near in time, similar in size, close in distance, and similar in its location on a corner lot on Veteran's Parkway. The School District argues PTAB's preference for comparable land sales six and seven is without basis in fact. PTAB states these sales illustrate the owner of Eastland Mall prefers to purchase lots adjacent to the mall for less than other parcels located along Veteran's Parkway. The School District argues the value is based on what any willing buyer would pay any willing seller for the land, not what Eastland Mall prefers to purchase. In sales comparison number one, there is a willing buyer and willing seller. PTAB also preferred comparable sales five, six, and seven because their zoning is similar to the subject property. The School District argues no evidence on record showed Sears' zoning is better or worse than the zoning for comparable sale one. Finch stated in his report that the zoning for land sale numbers six and seven is more restrictive

than for the subject property and that land sale numbers five, six, and seven are inferior because they are not located on Veteran's Parkway and are considerably smaller in size.

We find while PTAB did misconstrue both Finch's report and his testimony, PTAB's decision is sound. It is appropriate for PTAB to give little weight to the comparable sales of land. Sears does not own the building or the 9.19-acre parcel; thus, the most weight should be given to the income approach. The rent paid by Sears to Eastland Mall, while it is less than the rent paid by smaller stores within the mall, is comparable to rents paid by other anchor stores and is not below market-rate rents as was the case in Springfield Marine Bank. Both Salisbury and Finch arrive at values based on the income approach that support a reduction in the subject property's assessed value. Finch finds the fair market value of Sears to be a maximum of $4,494,438, and Salisbury finds the fair market value to be $3.8 million.

The School District argues PTAB's decision is against the manifest weight of the evidence and the Board of Review's opinion of value is supported by the evidence and should be affirmed. This case presents five opinions of the Sears property's fair market value, four supporting the Board of Review's assessment and Sears' approach, which does not. PTAB chose to follow Sears' appraisal, which left out a land valuation and a cost approach, resulting in an appraisal almost $2 million less than the land value, nearly $9 million less than the mortgage

- 15 -

debt allocated to the subject property, and over $13 million less than the purchase price of Eastland Mall allocated to the subject property. The fair market value reached through the income approach was based on discounted anchor store rents and on Springfield Marine Bank holding an owner still has to pay tax on the earning capacity of the property. Sears' comparable-sales approach was based on sales of anchor stores either vacant and/or in bankruptcy. Sears' appraisal did not make adjustments for the fact the subject property is in an excellent location with virtually no vacancy in the area.

Sears argues PTAB's decision was not against the manifest weight of the evidence. Under Winnebago County Board of Review v. Property Tax Appeal Board, 313 Ill. App. 3d 179, 184, 728 N.E.2d 1256, 1260 (2000), reduced fair market value "within the range of experts' valuation figures for the properties the PTAB deemed most suitable for comparison" is not against the manifest weight of the evidence. This court found it appropriate in Board of Review of Macon County for PTAB to determine which expert appraiser's approach to value was most persuasive and to rely on that. Board of Review of Macon County, 295 Ill. App. 3d at 247, 692 N.E.2d at 421. This court also found PTAB's decision as to the fair market value of the property was supported by the taxpayer's expert appraiser's sales-comparison approach to value and was not against the manifest weight of the evidence. Board of Review of Macon County, 295 Ill. App. 3d at 248, 692 N.E.2d at 421.

- 16 -

PTAB's findings are supported by substantial competent evidence, and its decision is not against the manifest weight of the evidence.

For the reasons stated, we affirm the Property Tax Appeal Board's judgment.

Affirmed.

MYERSCOUGH and TURNER, JJ., concur.