# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Board of Education of Ridgeland School District No. 122 v. Property Tax Appeal Board*,
**2012 IL App (1st) 110461**

---

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF RIDGELAND SCHOOL DISTRICT NO. 122, Cook County, Illinois, Petitioner, v. THE PROPERTY TAX APPEAL BOARD, THE COOK COUNTY BOARD OF REVIEW, SOUTH COOK COUNTY MOSQUITO ABATEMENT DISTRICT, and SEARS, ROEBUCK AND COMPANY, Respondents. |
| District & No. | First District, Third Division <br> Docket No. 1-11-0461 |
| Rule 23 Order filed <br> Rule 23 Order withdrawn <br> Opinion filed | June 13, 2012 <br><br> June 28, 2012 <br> July 11, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Property Tax Appeal Board's finding as to the market value of respondent's anchor store in a regional shopping mall for the tax years at issue was not against the manifest weight of the evidence in the record. |
| Decision Under Review | Petition for review of order of Illinois Property Tax Appeal Board, Nos. 05-23585.01-C-3, 06-29317.001-C-3. |

| Judgment | Affirmed. |
|---|---|
| Counsel on<br>Appeal | Ares G. Dalianis, Michael J. Hernandez, and Scott R. Metcalf, all of<br>Franczek Radelet P.C., of Chicago, for petitioner. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro,<br>Solicitor General, and Timothy K. McPike, Assistant Attorney General,<br>of counsel), for respondent Illinois Property Tax Appeal Board. |
| | Gregory J. Lafakis and Ellen G. Berkshire, both of Verros, Lafakis &<br>Berkshire, P.C., of Chicago, for respondent Sears, Roebuck & Company. |
| Panel | JUSTICE MURPHY delivered the judgment of the court, with opinion.<br>Presiding Justice Steele and Justice Neville concurred in the judgment<br>and opinion. |

**OPINION**

¶ 1     This appeal arises from an administrative review proceeding before the Illinois Property
Tax Appeal Board (PTAB). The PTAB considered a consolidated appeal of the valuation for
the tax years 2005 and 2006 by the Cook County Board of Review (BOR) of respondent
Sears, Roebuck & Company's (Sears) property at Chicago Ridge Shopping Center in
Chicago Ridge, Illinois. The BOR certified an assessed value of $6,085,755 for the property,
representing a market value of $16,015,144 and Sears sought review. Petitioner, Ridgeland
School District No. 122 (school district), intervened in the matter as a matter of right to
protect the interests of the taxing district.

¶ 2     The school district, Sears and the BOR each submitted appraisals to the PTAB and
presented testimony of their own experts. A final administrative decision was entered on
January 21, 2011, finding the market value of the property to be $10,400,000 for the
assessment dates at issue and reducing the certified assessed value of the property to
$3,952,000. The school district filed a petition for review with this court. For the following
reasons, we affirm the decision of the PTAB.

¶ 3                                    I. BACKGROUND

¶ 4     The property at issue is located in Chicago Ridge, Illinois, and contains a land area of
666,632 square feet, improved with a two-story, 211,311-square-foot masonry building
constructed in 1981. The property is zoned C-3, regional shopping district, and is part of the
Chicago Ridge Shopping Center. Sears operates an anchor department store on the property,
including a 22,424-square-foot auto center within the building.

¶ 5    For the tax years 2005 and 2006, the BOR certified an assessed value of $6,085,755 for the property, representing a market value of $16,015,144. Sears appealed this assessment, claiming that the assessment should be $3,268,000, or a market value of $8,600,000. The parties failed to reach a settlement and the PTAB held a hearing.

¶ 6    Sears presented an appraisal of the property prepared by Joseph M. Ryan, MAI, of LaSalle Appraisal Group, Inc. Ryan testified to his appraisal experience, in particular his experience with anchor department stores, and was accepted as an expert. He testified that he did a complete interior and exterior inspection of the property. Ryan termed the Chicago Ridge mall a super-regional mall, though he noted the mall was close to the 800,000-square-foot minimum for that designation. He found the mall, which has two anchor stores and inline stores in between, to be inefficiently designed.

¶ 7    As addressed in his appraisal report, Ryan did not consider the cost approach to valuation. Ryan explained the market development and forces in retail indicated that mall properties were losing market share to stand-alone, lifestyle center and big box retail stores and the design was obsolete by industry standards. He was unable to find any sales of anchor department store sites. He also noted that these types of stores have very close relationships with developers that are unique to the owner-user. Further, he noted that no shopping center developers he has interviewed utilized the cost approach in their investment decisions. Accordingly, he found the sales-comparison and income approaches were most applicable to valuing the property. He stated that this did not affect the final opinion of value for the subject property in any way because the present use was the best use of the property.

¶ 8    Ryan explained that the income approach began with estimating the potential gross income for the property. The second step is to estimate the vacancy and collection loss for the property. Third, the effective gross income is factored from the first two steps and operating expenses are factored in to determine a net operating income, which is capitalized into a value estimate. Because the property is owner-occupied, there is no income or expense derived from operation of the property; therefore, Ryan's income-approach calculations were market-based.

¶ 9    Ryan obtained median rental rates for several similar department stores in the Midwest, avoiding use of any big box retail stores. He explained that anchor department stores frequently set rent at a per-square-foot rate based on a percentage of sales. Based on the rents at the comparable sites and adjusting for lease date, size, location, condition of the property and the auto center, Ryan concluded the property would have a rental rate of $5 per square foot. He determined credit losses and a vacancy allowance and a capitalization rate of 10.58% to conclude that the property had a market value of $8,700,000 million for 2005 and 2006.

¶ 10    Under the comparable-sales approach, Ryan identified several similar properties in Illinois, Ohio, Michigan and Indiana because local comparable properties were sale of leasebacks, financing mechanisms, or big box stores that could not be used. He indicated that he verified all terms and conditions of the sales and adjusted for location by demographics, competitive market conditions, population density and median household income. Ryan noted some out-of-market sales in Colorado and Texas to show that there is a defined market

for department stores. Ryan settled on a market value of the property for $40 per square foot, or $8,450,000.

¶ 11 Ryan took the two values and, giving more weight to the comparable-sales approach because the property is owner-occupied and not leased, concluded the property had a final market value estimated at $8,600,000. Ryan stated that his opinions were formed in conformance with the standards and ethics of his profession. Ryan also admitted that he did not form an opinion of the value for the land.

¶ 12 The BOR entered into evidence a copy of its notes on appeal, which included an appraisal for the property prepared by Jeff Hortsch for the Cook County assessor's office. The Hortsch appraisal provides the effective date of valuation of January 1, 2004. The BOR did not present Hortsch as a witness.

¶ 13 As with Ryan, Hortsch also did not utilize the cost approach. In preparing his report, he reviewed Ryan's report and conducted a site investigation. Hortsch determined that the property had an estimated value of $11,810,000 under the income capital approach and $11,835,000 under the sales comparison approach. Hortsch concluded that the property had a value of $11,835,000 as of that effective date.

¶ 14 The school district presented the report and testimony of its appraiser, James A. Gibbons, MAI, of Gibbons & Gibbons, Limited, who concluded that the property had an estimated market value of $14 million. Gibbons concurred with the other appraisers that the highest and best use of the property was the continuation of the existing commercial improvements. Unlike the other two appraisers, Gibbons utilized all three approaches to value.

¶ 15 Under the cost approach, he estimated market value to be $19,690,000. Under the income-capitalization approach, Gibbons found the property to have an estimated market value of $13,860,000. Finally, he found that the property had an estimated market value of $13,740,000 under the sales-comparison approach.

¶ 16 Gibbons utilized four land sales within three miles of the property under the reproduction cost approach. Gibbons used four land sales from the Oak Lawn area at rates from $17.40 to $40.21 per square foot. Gibbons concluded that the land component of the property had a market value of $15 per square foot or $10 million. In estimating the replacement cost of the improvements on the property, Gibbons used the Marshall Valuation Service cost manual and after deducting depreciation, arrived at an improvement value of $9,687,989 for the cost-approach total of $19,690,000.

¶ 17 Under the income-capitalization approach, Gibbons utilized five comparable properties from Chicago, Orland Park and Schaumburg, Illinois. One rental was an anchor department store, one rental was a mall out lot and the others were attached mall rentals. Gibbons noted the Carson Pirie Scott department store at the Chicago Ridge mall had a rental rate of $5.03 per square foot, but opined that location was inferior to the subject property and estimated a rental rate of $5.50 for the property. After determining a capitalization rate of 7.5% for the property, he concluded that the property has an estimated market value of $13,860,000 under the income-capitalization approach.

¶ 18 For the sales-comparison approach, Gibbons utilized three comparable sales from Broadview, Bloomingdale and Orland Park, Illinois. One of the comparables was an anchor

department store while the other two were department or big box stores. Comparing sales rates for the property to the comparables, Gibbons found that the property had an estimated market value of $13,740,000 under the sales-comparison approach. In conclusion, Gibbons considered the three values and gave primary consideration to the income and sales-comparison approaches to reach his estimated market value of $14 million as of January 1, 2005.

¶ 19 The school district also submitted an appraisal review of Ryan's appraisal by Eric W. Dost, MAI, of the Dost Valuation Group, Ltd. Dost opined that a determination of land value is necessary for a proper determination of highest and best use of a property and an important component of total value. Dost took issue with several of the comparables utilized by Ryan based on their locations out of state and out of the area and the inferior demographics of those sites. In addition, Dost noted that there were contingencies surrounding these other sales, such as bankruptcies or sale-leaseback transactions, that made the properties improper to use as comparables. Further, Dost opined that Ryan incorrectly used the Dollars and Cents of Shopping Centers publication in estimating retail sales and utilized an unsupported vacancy rate. As a result, Dost found Ryan's approach unreliable.

¶ 20 The PTAB considered the evidence and testimony and determined that a reduction in the assessment of the property was warranted. No weight was afforded the Hortsch appraisal because the estimate was for January 1, 2004, the appraiser was not presented as a witness to testify to his qualifications and the contents and conclusions of his report. The PTAB detailed the strengths and weaknesses of the remaining two appraisals.

¶ 21 The PTAB noted that both appraisers, as well as Dost, agreed that the highest and best use of the property was as improved and that the subject was in good condition with an effective age of 20 to 25 years and economic life of 40 to 45 years. It noted that only Gibbons developed the cost approach and that his estimate under this approach was over 40% greater than the other two approaches he followed. Based on this vast disparity in values, the fact that neither Ryan nor Dost was of the opinion that the cost approach had any relevance, and Gibbons' own discounting of the approach in his final market value estimate, the PTAB found that the cost approach did not provide a true reflection of the property value.

¶ 22 The PTAB found that the determinations of market rent and estimated expenses were similar, but that Ryan's determination of $5 per square foot and Gibbons' expense estimate based on 2005 numbers were better supported by the record. It found that Ryan's estimated vacancy rate was better supported, but that Gibbons' estimated capitalization rate was supported by the data from comparable sales.

¶ 23 With respect to the sales-comparison approach, the PTAB found that only one of the three sales utilized by Gibbons was similar to the subject property. One of Gibbons' three comparable sales and five of Ryan's eight comparable sales were similar to the subject property. Accordingly, the PTAB utilized these six sales to conclude that the property had a value of $49 per square foot of building area, or $10,354,000, rounded. Utilizing this number and the value from the income approach, the PTAB concluded that the property had an estimated market value of $10,400,000 and certified an assessed value of $3,952,000. This appeal followed.

¶ 24                                          II. ANALYSIS

¶ 25        The school district argues that the PTAB failed to utilize the appropriate valuation methodology in determining the estimated market value and assessed value by failing to consider the evidence of the land value, failing to properly account for differences in location for properties used in comparable sales and rentals, and for giving inconsistent weight to similar evidence in other PTAB decisions. We review PTAB decisions under the Administrative Review Law (735 ILCS 5/3-101 (West 2008)) and factual determinations by an administrative agency are held to be *prima facie* true and correct and will stand unless contrary to the manifest weight of the evidence. 735 ILCS 5/3-110 (West 2010); *Bloomington Public Schools, District No. 87 v. Illinois Property Tax Appeal Board*, 379 Ill. App. 3d 387, 390 (2008). However, questions of law, such as whether the PTAB considered the proper methodologies for valuation, are subject to *de novo* review. *Cook County Board of Review v. Property Tax Appeal Board* (*Omni*), 384 Ill. App. 3d 472, 479 (2008).

¶ 26        The school district argues that, pursuant to the Property Tax Code, every property in Illinois must be given an assessment that includes an assessed value for the land and an assessed value for the improvements that are then added together to obtain a total assessed valuation for the property. 35 ILCS 200/9-155 (West 2010). The school district argues that the Second District of this court has held that "it [is] necessary to calculate the entire assessment by valuing the improvements as well as the land." *Showplace Theatre Co. v. Property Tax Appeal Board*, 145 Ill. App. 3d 774, 777 (1986). The school district cites to Connecticut state court cases, including one unreported case, that have followed this "precedent" to conclude that it was fatal error to not determine a specific land value. See *National Amusements, Inc. v. Town of East Windsor*, 854 A.2d 58, 84 (Conn. App. Ct. 2004).

¶ 27        We agree with appellees that this is a misconstruction of *Showplace Theatre* and Illinois case law does not have such an absolute requirement. In *Showplace Theatre*, the taxpayer objected to the assessed value of the land but not of the improvements. *Showplace Theatre*, 145 Ill. App. 3d at 776. The court rejected the taxpayer's attempt to limit review of the tax assessment; instead, it noted that the statutes under which the appeal was made were clear that an appeal required consideration of all calculations necessary to a final determination. *Id.* at 777. The court continued to hold that the PTAB, having statutory authority to recompute the value of improvements, made its determination based on competent evidence and affirmed the PTAB's findings. *Id.* at 777-78.

¶ 28        Accordingly, *Showplace Theatre* holds that review of an assessed value of real property requires consideration of all the factors. In Illinois, this requires valuation at fair cash value at a fair, voluntary sale, and where there is no contemporaneous arms length sale, there are three valuation methods to use: the sales-comparison approach, the income approach, and the reproduction cost approach. *Omni*, 384 Ill. App. 3d 472. As addressed by the *Omni* court, the sales-comparison approach is the preferred method, but each of the approaches should be utilized where reliable information is available to serve as a check on the value. *Id.* at 480-81.

¶ 29        That is not to say that the sales-comparison approach absolutely must be used. Nor is a

single-valuation method inadequate as a matter of law. Rather, where the evidence supports such a practice and the appraiser supports exclusion of a method of valuation by citation to this evidence, it is sufficient for the PTAB, and the courts, to follow. *Id.* at 487-88; see also *Board of Education of Meridian Community Unit School District No. 223 v. Illinois Property Tax Appeal Board*, 2011 IL App (2d) 100068, ¶¶ 46-48.

¶ 30 In the instant matter, Ryan provided explanation of why he did not utilize the cost approach to valuation that would provide a specific valuation for the land both in his appraisal and his testimony. Likewise, Dost agreed that this approach was unreliable for the property. Accordingly, Ryan undertook the other two valuation approaches to come to his conclusion and provided sufficient detail of record to support his findings. Accordingly, his failure to follow the cost approach and provide a value for the land was not fatal.

¶ 31 The school district also complains that Ryan improperly focused on several comparable sales from other states while the PTAB ignored sales prices cited by Gibbons of nearby properties. The issue of whether comparable properties establish the uniform assessment and valuation of properties is a question of fact. *Du Page County Board of Review v. Property Tax Appeal Board*, 284 Ill. App. 3d 649, 653-54 (1996). In this case, Ryan did consider properties from out-of-state as comparables including location and demographic data. However, he adjusted for different variables. The PTAB took this into account, as well as the types of properties, in accepting five of the properties utilized by Ryan and one of the three used by Gibbons, rejecting the use of big box stores. The record indicates that the discrepancies inherent in utilizing properties from different locations were considered, the PTAB understood and addressed this, and followed the evidence of record to accept the best comparable properties. Its decision is not against the manifest weight of the evidence.

¶ 32 Finally, the school district argues that the PTAB has ruled inconsistently in this case, when compared to other PTAB cases, in particular a companion case before this court involving a Sears store in Schaumburg, Illinois. The school district argues that PTAB accepted evidence of sales prices of comparable properties in one appeal, but did not in the other. It maintains that these inconsistent findings raise legitimate questions concerning the methods used by PTAB in ascertaining value. The school district does not cite to any authority binding on this court, but cites PTAB decisions where comparable sales from outside Cook County were disfavored to conclude that PTAB's methodology requires reversal.

¶ 33 We again agree with Sears and the PTAB that the previous PTAB decisions are not grounds for reversal. This court is not bound by decisions of an administrative agency. As noted above, factual decisions of the PTAB are reviewed under the manifest weight of the evidence standard. Sears further notes that, under the Illinois Property Tax Code, the PTAB is charged with making a decision on an appeal that "shall be based upon equity and the weight of evidence and not upon constructive fraud, and shall be binding upon appellant and officials of government." 35 ILCS 200/16-185 (West 2010). Under this standard of review and authority, Sears argues that each decision by the PTAB is necessarily fact specific and based upon the particular record of each case. Therefore, we find, as addressed above, based on the evidence of record, the PTAB's decision is not against the manifest weight of evidence of record. Accordingly, the finding of the PTAB is affirmed.

¶ 34                          III. CONCLUSION

¶ 35        For the foregoing reasons, the decision and order of the PTAB is affirmed.

¶ 36        Affirmed.